JOHN REHRIG PACIFIC Mr. Carlson. May it please the court, my name is John Carlson from Carlson, Gaskin, Olds, an intellectual property firm just outside of Detroit, Michigan. I'm here on behalf of Rehrig Pacific Company. Rehrig Pacific Company has been owned by the Rehrig family for three generations. They make a variety of reusable plastic packaging products. It's not a, Rehrig's not a name that consumers see on an ordinary daily basis. But if you go to the grocery store, a lot of the items in your grocery cart may have gotten to the grocery store inside a Rehrig product. How do you distinguish a top frame from a pallet? Two of the products that Rehrig makes are top frames and pallets. Pallets, as is indicated in the specification and in the prior art, maintain goods above the ground and have a large opening for receiving the tines of a forklift or a pallet lift jack. Top frames don't. Don't what? Don't have openings for receiving the tines of a forklift. Did you describe the top frame with that kind of a structural limitation? It's the closest, well, two things. You defined it in terms of use. Did you give us any structural definition of what a top frame is? It was defined not just in terms of use. There's also a definition in the specification. It says pallets typically require large openings. The specification, excuse me, can you give us a site for the column line? Column two, it's at A152. Column two, lines 27 to 29. Column two? Yes. We're on line 27. Pallets typically require large openings for receipt of pallet jacks. And then later in the specification, column five, lines 38 to 43. A top frame is typically used to help stabilize the shipment of objects at the upper end in conjunction with a pallet at the lower end. So. But I'm still now looking for a structural definition of top frame. You gave me a structural definition of a pallet. The only way you've defined a top frame is by its use. It's used on top to stabilize. Right. I think under the, there's no explicit definition in a negative sense, the way we're presenting it here. That's not in the specification. Well then, isn't the, doesn't the patent office have a point that you could easily put a pallet on top and it would perform the top frame function and therefore qualify as a top frame? That's assuming the definition of top frame is only by terms of its use in the first place. Where's the definition in the specification  Again, under the Bell Atlantic case, I think there's a definition by implication. Under the Bell Atlantic case, they said consistent usage in the specification can even trump the ordinary meaning. Now in this case, we don't have to trump the ordinary meaning because the ordinary meaning, as used in the art, is consistent with the way we used it. But even in the Bell Atlantic case, it said consistent usage can trump the ordinary meaning. But I think the language you cited us to says typically. I mean, that doesn't mean that there's an express disavowal of other structures as long as the function can be performed as the chief pointed out, right? Typically means, well, characteristically. Typically means characteristically, those are the characteristics of a top frame and the characteristics of a pallet that are distinguished. But there's nothing in the specification that would exclude the structural characteristics of a pallet from being considered a top frame as long as the function is performed. Well, there is by implication. There's four embodiments of pallets described. There's two embodiments of a top frame described. The top frame term is consistently used with respect to the top frame embodiments. The pallet term is consistently used with respect to the pallet embodiments. But we don't limit claims to the disclosed embodiments in the specification, right? I mean, we don't import structural limitations. Even if the structure was discussed in the specification, we don't import that into the claims. Well, first, most of the cases like Phillips or the trans-Texas, in-rate trans-Texas case are cases where they are trying to import a limitation straight out of the spec. Typically, under the single embodiment rule, the fictional single embodiment rule that we only disclosed it this way, therefore, you have to interpret our claim term that way. However, you also have cases like Bell Atlantic and the Mars case where if you use two terms and you use them consistently as distinguished from one another, then you can create a definition that way in the specification. Is that equally applicable in this context where we're dealing with the board and the principle that they're entitled to give the claim terms their broadest possible, broadest reasonable interpretation? I believe so. It's broadest reasonable interpretation in light of the specification. And although the two cases that I mentioned, Bell Atlantic and Mars, are not appeals of patent office cases. I think those same tools for interpreting the specification are also used, albeit maybe with a different standard. Is it reasonable in light of the specification? In Bell Atlantic, though, the terms mode and rate were incapable of performing the same function. They were entirely distinct. There was no way to use a mode to do a rate job or a rate to do a mode job. It's different here. Oh, I think that's incorrect. If I understand what you're saying, in Bell Atlantic, they said, no, the ordinary definition of, I can't remember which direction it went, the ordinary definition of mode would encompass rate or vice versa, which, yeah. But however, the way these terms were used in the specification, we're going to draw a distinction between them. They were defined by implication as separate and distinct concepts in the specification. Here. What would prevent me from taking a pallet, putting it on top, stabilizing a structure, and then you accusing me of infringement? Because it's not a top frame, and as used in the. Well, but I would be using it as a top frame, and you would point out to me that you don't have a structural limit on what a top frame is, other than use as a stabilizer. Well, I think there is a definition in the art that it does not include a column. You're using the patent office's definition of top frame, but our definition of top frame would exclude pallets. Show me that definition, then. That definition's not in the spec. I'm saying the, but the definition that we're arguing is that a top frame does not include columns, does not include pallet, does not include openings for tines of a forklift. That's our definition. So if you use the patent office definition, you're correct. When you use your own special definition, your own lexicography, as we call it, don't you have to put that in the patent somewhere? If you want to contradict the ordinary meaning, you do. In our case, we were using it in accordance with the term of art as shown by the prior art references. In fact, the prior art reference that the director cited, which was not relied on the board, by the board, but was cited in their brief, the Flum reference actually takes a pallet and puts it on top of a stack of goods, and they call it a pallet. They don't call it a top frame. They call it a pallet. So even with this intended use or this possible use, yes, you could take a pallet, you could throw it on top of a stack of goods. It's now a pallet on top of a stack of goods. It's not a top frame. You could take your shoe, put some water in your shoe, and drink out of it, but that doesn't make your shoe a drinking glass. So they, sorry for the hasty, unpleasant analogy there. I think I've done that before. So I think the specification does a better job, even better than the Bell Atlantic case, and better than Mara's of distinguishing the pallet and the top frame. The prior art, as well, also used the term top frame to refer to a top frame and referred to a pallet as a pallet. The Flum reference that the director cited even takes a pallet and puts it on top of a stack of goods, and they still don't call it a top frame. And then I think. But does it matter whether they call it that? I mean, the claim says comprising first and second top frame members, first top frame member having a first plurality of cross ribs extending downward therefrom. If the pallet has all that, why isn't it, and it goes on, the second top frame member having a second plurality of cross ribs extending upwardly, mating with the first plurality. I mean, this claim gives a clear structural definition for top frame. And comprising, so it could have other stuff, too, like holes for putting in forklift stuff. I mean, it's a comprising claim. It wouldn't be a top frame anymore. And the preamble says it's a top frame, and nobody's disputing that the preamble has weight in these claims. Okay, so there's a structural limitation that it be a top frame that has each, and it has each of these structural components. Right. But if it's a frame of some sort, maybe a pallet, it's sitting on top, and it has these exact structural components, why isn't that satisfying the definition? Because that's not how the word top frame is used in the art. It's not how the word top frame is used in our specification. It's not how it's used in the prior art. In this case, we even have the third party requester who's using that term in exactly the same way. So you're saying the plain and ordinary meaning of the word has structural connotation to it? Yes. That's the distinction we're making. That's where the definition, that's where our definition comes from. And I think because it was a term of art in this specification, it wasn't explicitly defined. It's sort of, it's, that's why it says it's, top frames aren't, this specification didn't coin the term top frame, and it's not using the term top frame contrary to some established ordinary meaning. It's using it in accordance with the ordinary meaning. That's why it says things like a top frame is typically used. You know, these are, it's a known term. It's a known, it's a known structure, at least top frames are known. You know, there were wooden top frames years ago, and then there were plastic top frames in the prior art reference that, you know, and now this top frame here as well. Do you wish to save this rebuttal time? Yeah, I'll save the rest of my time if there's no questions at this time. Ms. Pettigrew. Good morning.  The board reasonably interpreted the term top frame to mean a structure that's capable of stabilizing objects on top of a pallet without any specific structural attributes. Now, if you look at column 16, it tells us that the top frame is defined in figures 17 through 27, and we start looking through 17 through 27, and we get a kind of clear picture of something that doesn't look like a pallet at all. Why can't that satisfy our definitional search here? Well, those figures show the two top frames that are claimed by Rarid, and all those structural limitations are in the body of the claims, and we don't limit the claims to the particular embodiments that are in the patent. But these embodiments, you're correct, all have features which are distinguishable from pallets. Can we use those features in conjunction with the plain meaning argument that Mr. Carlson has given us to distinguish top frames from pallets? Well, I think it's fair to say that pallets have features that are distinguishable from top frames, including columns and forklift openings. But there's nothing, I don't think it's necessarily fair to say that top frames have features that are distinguishable from pallets. In other words, a pallet may have additional structural features. Well, the other side tells us that pallets, well, that top frames have the feature of being planar  There's no description of that in the patent at all. Well, let me ask you, going to Claim 25, there's preamble language and the board agreed that that was limiting, correct? The board, yes, correct. The board agreed that it was limiting, but only in terms of its function. Well, what I'm struggling with, frankly, is that if you apply principles of statutory construction to construing this claim, you've got two different terms used, which if we were doing, as I said, a statutory construction analysis, one would assume that Congress intended, by the use of two different terms, to be referring to two different things. If that is the way we are to construe it, that's the other side's argument and you lose, right? Not necessarily, Judge Prost. They are two different things in terms of what they do, but they're not necessarily mutually exclusive in terms of their structure. A pallet sits under the goods, a top frame is placed on top of the goods to stabilize them. But, for example, the prior art pallet, the Koenig reference, has all of the structural features that are in the body of Claim 25. So, there are actually many things, many structural features that the pallet and the top frame share. So, what is your, I'm sorry, what is your definition of top frame? Well, I was going to point out that RERG actually does not have a definition of top frame. RERG says there's a customary and ordinary meaning. The way the board interpreted it was in terms of what it does, that it's a structure capable of stabilizing objects on top of a pallet. What RERG says. Well, any structure capable of stabilizing goods on top of a pallet? Yes. The word top frame by itself only means that. RERG has not told us exactly what it means. RERG says that a top frame is a structure that is not a pallet, but the only. But that is, but he expressly says there's some structural differences that no one in the industry would look at a pallet, you know, with its depth and its holes for forklifts and say, ah, there's a top frame. And that he suggests that by reference to prior art and other pieces of evidence that the plain and ordinary meaning to one of skill in the art, maybe he doesn't define it so precisely in terms of every structure, but it certainly isn't a pallet. I think he's made that point quite clearly. Well, for example, he cites the Piggott reference, which simply shows a top frame and it doesn't it doesn't say a top frame is a structure that does not have forklift openings, which is something that he wants to say. He could easily say. But if I looked at 100 references to bicycles and they all showed an object with two wheels, you'd be arguing to me they don't preclude five wheels from being a bicycle. And I would say, but that's about what the plain and ordinary meaning is. And how else can he show the plain and ordinary meaning, but to refer to lots of documents that show how people of skill in the art understand it to be? Well, for example, he could have put a declaration in from a person of ordinary skill in the art saying this is what the structure of a top frame is. That's that's not in the record. He's really only he's pointed to very little. He's pointed to one patent and the request from the third party, third party reexamined requester. But what's the PTO's evidence to the contrary? Because the PTO has the burden. The PTO gives a gives a patent term, a claim term, the broadest reasonable interpretation during prosecution, during reexamination. Rarely could have. This court has instructed that claim terms are to be given their plain and ordinary meaning to one of skill in the art. He has introduced evidence about what that plain and ordinary meaning is. The PTO has rejected that evidence. But based on what? The PTO is the one with the burden. So you've rejected his evidence. And what have you all cited to, to the contrary? The board, the examiner and the board relied on his patent itself, which does not impart any particular structural characteristics to a top frame. It does, it shows two embodiments. But that's it. And again, all of the structural limitations of a top frame appear in the body of the claim. There's no reason to add any additional structure to the term top frame itself. I'm interested by your suggestion that a declaration would have been sufficient to supply what the patent doesn't. Is, is that PTO procedure? It could, it, yes, he could have submitted a declaration to show what top frame would have meant to a person of ordinary skill in the art. And. It may not have been. At that point you would have accepted or rejected the definition. But you would not have necessarily tried to incorporate that declaration into the document itself. Into the patent document? Yes. Right, it would just be additional evidence in the record to show. Of what the patent means. What a person of ordinary skill in the art would think the customary and ordinary meaning of the term was. There was a dissent in this case by one of the board members, which in my experience and yours is broader than mine, is, is a bit unusual. It is a bit unusual. And what the dissent said in part at least is I think the dissent was troubled by the language in the preamble and the fact that it, it indicated that the applicant or the patentee in this case was really talking about two different distinctive and separate things when he was referring, using two different terms to a top frame and then to a palette. Why not? Why isn't that correct? Again, I think they are distinct in terms of what they do. The use, the uses, their intended functions. But they're not necessarily completely different in terms of their structure. I thought it was the reverse. No, we're talking about that the structure is different. They're, they're different in structure. Obviously one is arguably thinner and the other one could have holes.  That they can perform the same function. No, am I confused? Well, usually the word palette is used to describe the, the plastic piece that sits at the bottom of the goods and a top frame is used to describe the plastic component that sits at the top. Now a palette can be used as a top frame. But just because it has the label palette doesn't mean it can't be used as a top frame. The preamble is, everyone agrees the limitation, correct? Yes, but not necessarily a structural limitation. Well, the preamble says a top frame wherein the top frame assembly and the palette have at least one layer of objects positioned there between. So that's part of the limitation, right? It has to be something that's sitting on top of the bottles, correct? Correct. Okay, so there's a structural limitation. But yet the board relied entirely for claim 25 on Koenig and held there was anticipation, not obviousness. It didn't bring in plum or whatever the other reference is. Koenig shows nothing on top. It is a single palette on the bottom and a bunch of bottles sitting on top it. It never discloses using the palette on top or shows anything at all sitting on top of any of those objects. If everyone agrees the preamble is a limitation and the preamble clearly says something on the bottom, bunch of stuff in the middle, and the top frame on top, how can Koenig anticipate? The board said that the term top frame in the preamble is a limitation but not a structural limitation. So I don't think the board understood the word top frame to limit something that's absolutely required to sit on top all of the time. What? A top frame? Then you're saying a top frame could be something on the bottom of the bottles? No, you said the use has to be using it on top. No, it has to be capable of being used on top to stabilize the objects. That was the board's. But this preamble says where in the top frame assembly and the palette have at least one layer of objects positioned between them. I don't understand how we run away from that requirement of the claims once we all accept the preamble is a limitation. Again, I think you're, are you trying to, are you saying that there is a structural limitation in the preamble? I'm reading the preamble which everyone agrees is a limitation. Well, for one thing, I think you could actually take out the word, the phrase top frame and just say an assembly adapted for use with the palette. Where in the assembly and the palette have at least one layer of objects there between. And then the rest, the body of the claim structurally describes. Can I supplement Judge Moore's question? Yes. Where is there any art showing something capable of being used on top? Well, in this case, there's flum which happens to show a palette that is actually being used on top. So it indicates that a palette is capable of stabilizing objects. But that's not cited against this claim. This claim was rejected only on anticipation, only in light of Koenig. Well, we're now just talking about what the definition is now. Koenig is, was used as an anticipation rejection because it contains every single structural limitation in the body of the claim. Except the where in one in the preamble. Except the on top one. Yes, but if you understand on top to mean capable of being used on top to stabilize. That's what I'm wondering. What tells us that Koenig is capable of being used on top? Rarig did not contest that finding by the board. Rarig is only talking about claim interpretation here. Koenig has essentially the same structure that's claimed in claim 25. And you can't patent a new use for an existing prior art structure. There's a case called In Re Schreiber which was cited by the board in which an oil dispenser was used to anticipate a popcorn dispenser. A palette and top framer are a lot closer than a popcorn dispenser and oil can dispenser than oil dispenser. To anticipate, you just need to meet all of the structural limitations. I'd like to get back to. Is top one of the, is top a structural limitation? I don't think so. Not the way the board interpreted it. It's part of the function that it's capable of being placed on top of the others. Could that be a mistake of the board though? Frame is perhaps the word that you would equate with assembly and then we're given some additional information that it's a top assembly. Right. But again, I don't think, and we've talked about the Koenig reference, the examiner and the board found that it was capable of sitting on top and performing that function of a top frame. And Rarig has conceded that they have not challenged that finding at all. Well, but they, you say they've conceded it. I, A, don't see a concession, but B, they're arguing that you are wrongly construing top frame. It can't be a palette and they're pointing to Koenig and saying see that's a palette, it's not a top frame. I see it all to be a very similar argument. I think when you, they're pointing at something that has the label of a palette and saying that's a palette because it's called a palette. But it's still capable of being used as a top frame to stabilize the objects on top of the palette. Thank you, Ms. Pettigrew. Thank you. Mr. Carlson, you have almost three minutes. I just want to address a couple points. First, she mentioned if we had just submitted the declaration, you know, which I think is easy to say now. She can't say that they would have allowed it necessarily, but I think looking at our specification, looking at the prior art that's cited, I think it's pretty clear. If I had asked a Rarieg employee or if I had paid a consultant, I think I could have gotten a declaration. But if I had told you, no, I'm going to get a competitor, not just any competitor, but a competitor in this art that makes top frames and makes palettes. And a competitor that wants this patent invalidated, I'm going to get him to tell you that a palette is not a top frame. I would think that that would carry a lot more weight. And that's what we have here. We have a competitor in this art who wanted this patent invalidated saying, a palette is not a top frame. Not explicitly, but implicitly in the ways that I've explained in the brief. She also mentioned that there's just the two embodiments of top frames. Again, they're very similar. One is a rectangle, one is a rectangle with an interior cross. And then the specification says, accordingly, the top frame invention can have various designs. Well, if one of them is a rectangle and one of them is a rectangle with an interior cross, that's your example. If that's your example of various designs, then I think the world of top frames is actually pretty small. And it didn't reference any of the other four embodiments of palettes that are in the specification already. So I think that statement in the specification as well narrows the definition of top frame. If we were to conclude that claim 25 wasn't properly held to be anticipated by Koenig for the reasons that we were discussing with Ms. Pettigrew, that Koenig shows nothing on top, not for the structural limitations that you would like, but for the other reason, would this just be followed with an obviousness rejection in light of flume and that would be the end of it? Possibly. I suppose at that point I could also amend the claims to include the definition that I'm asking for now as well. Why in the world didn't you do that earlier? Well, I don't think I was involved back then. I'm not sure when I got involved. Maybe around final. But in a re-exam, I know you have the same rule, that you get the broadest reasonable construction in light of the specification. And it works in a patent application because you have endless ability to file RCEs and amend the claims, but that's not true in a re-exam. I assume you don't want to amend in a re-exam if you think the claim already covers it because of intervening rights as well. Well, that was the other thing I was going to say. In a re-exam in general, then you also have the intervening rights issue. So I know you have the same rule for re-exams and regular patent applications, and it's not an issue I raised, but maybe in the future consider whether there ought to be a different standard there. Thank you. Thank you, Mr. Carlson. That concludes our morning.